Estate of Steffke: Wisconsin Valley Trust Company and another, Appellants, v. Department of Revenue, Respondent.

*No. 224.  Argued September 4, 1974.—Decided October 29, 1974.*
(Also reported in 222 N. W. 2d 628.)

For the appellants there was a brief by *Schmitt, Nolan & Hansen* of Merrill, and oral argument by *Leonard F. Schmitt.*

For the respondent the cause was argued by *James P. Altman,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

HEFFERNAN, J.  The order of the trial judge concluded that Priscilla Baker Lane Steffke was not, for the purposes of heirship proceedings, the legal wife of Wesley A. Steffke, because her prior marriage to Crockett Warren Lane was not effectively terminated, for the reason that a Mexican divorce in 1966 granted to Priscilla Baker Lane was invalid under the law of the state of Wisconsin. Priscilla Baker Lane was the principal named beneficiary of the will of Wesley A. Steffke.  Hence, her right to take from the estate of Steffke is unquestioned.  *Estate of Steffke* (1970), 48 Wis. 2d 45, 179 N. W. 2d 846.

The practical effect of the order of the probate court was to require that the inheritance tax be computed at the rates applicable to beneficiaries who are strangers to the deceased, rather than at the rates applicable to widows.

The appeal is taken by the Wisconsin Valley Trust Company and Priscilla Baker Lane Steffke as coexecutors of the estate, and by Priscilla Baker Lane Steffke in her own right.

We conclude that the trial court's order holding that the Mexican divorce was not valid in the state of Wisconsin, that the only heirs at law of the decedent Steffke were his daughters, and that "stranger" rates and not those applicable to the widow of a decedent is correct and must be affirmed.

Priscilla Baker Lane was married to Crockett Warren Lane on November 11, 1944. In October of 1963, Priscilla Baker Lane and Crockett Warren Lane entered into a property settlement agreement and at the same time Lane signed a waiver submitting to the jurisdiction of the Civil Court in the city of Juarez, state of Chihuahua, Republic of Mexico. He also executed an entry of appearance and power of attorney in order that a divorce might be granted in accordance with the applicable laws of Chihuahua, Mexico. Wesley A. Steffke was divorced from his first wife in Wisconsin in 1965. Subsequently, in June of 1966, Priscilla Lane and Wesley Steffke went to Mexico together to secure Priscilla's divorce. Counsel for appellants correctly summarizes the facts in their brief:

"She and her husband were lifelong residents of Wisconsin. She went to Mexico for the purpose of obtaining a divorce from Lane. She appeared personally in the First Civil Court of Bravos District, State of Chihuahua, Republic of Mexico. Her husband, Lane, appeared generally by attorney appointed by him through power of attorney. . . . He never was in Mexico.

"It is undisputed she did not take up residence in Mexico but she complied with the laws of the State of Chihuahua, Republic of Mexico which gave the court jurisdiction. . . . After her appearance in the Mexican Court she returned to her home in Wisconsin.

"Judgment of divorce was entered in the above court June 9, 1966.

"Mrs. Lane married Wesley A. Steffke July 3, 1967."

The Mexican court granted the divorce for "incompatibility of temperaments," a ground not recognized by Wisconsin law. It is undisputed that the divorce was technically bilateral and that the Mexican court had jurisdiction over both the parties. The validity of that divorce in Mexico is unquestioned. Accordingly, had the divorce been granted under the same circumstances in the United States, the decree would be entitled to "full faith and credit" and would be enforceable anywhere in this country. The constitutional mandate of "full faith and credit" is not applicable, however, where a decree or judgment is obtained in a jurisdiction outside of the United States. Leflar, *American Conflicts Law*, p. 172, sec. 74, points out:

". . . there is no compulsion on any American state to recognize or enforce judgments from foreign countries. An American court can deny effect to a foreign judgment because it does not like the kind of service employed even though the service was valid, or because the foreign judgment is on a kind of cause of action that the forum court for any reason dislikes."

On page 202, Leflar writes:

"When a court is not bound by constitutional compulsions, it may properly employ local public policy as a reason for refusing to entertain suits on objectionable foreign causes of action. Since the full faith and credit clause does not apply to the judgments of other nations, the states are left free to refuse enforcement of them on the local public policy ground."

Essentially then, since there is no compulsion constitutionally for the state of Wisconsin to recognize the Mexican decree, it will be recognized only on the principles of comity. The doctrine of comity, as applied in Wisconsin, was well stated in *Hughes v. Fetter* (1950), 257 Wis. 35, 39, 42 N. W. 2d 452, 49 N. W. 2d 280, reversed (1951), 341 U. S. 609, 71 Sup. Ct. 980, 95 L. Ed. 1212 (reversal on grounds not pertinent to the instant case) : [1]

"In this state the courts will generally enforce the law of the place where the injury occurred, unless to do so is contrary to the law, morals, or policy of the state where the action is sought to be maintained. However, if the policy of the forum has been expressed positively in a statute, that policy must prevail. 'When the legislature speaks upon a subject, upon which it has the constitutional power to legislate, public policy is what the statute . . . indicates.' . . . By virtue of the doctrine of comity, rights acquired under statute enacted or judgment rendered in one state will be given force and effect in another, unless, as said, against policy or laws of the state, prejudicial to interests of its citizens or against good morals and natural justice; comity being a rule of practice, however, and not a rule of law. . . . The doctrine of comity results in recognition of a decree of a different state not entitled to full faith and credit. It is neither a matter of absolute obligation nor of mere courtesy and good will, but is recognition which one state allows within its territory to legislative, executive, or judicial acts of another, having due regard to duty and convenience and to rights of its own citizens."

Two Wisconsin statutes are controlling and preclude this court from recognizing the Mexican decree as a matter of comity. Sec. 247.21, Stats., provides:

"247.21 **Foreign decrees; comity of states; divorce abroad to circumvent laws.** Full faith and credit shall be

[1] While the *Hughes Case,* in substantive law terms, was applying a conflicts of law rule now outmoded and antedating *Wilcox v. Wilcox* (1965), 26 Wis. 2d 617, 133 N. W. 2d 408, the doctrine of comity expressed in *Hughes* remains the applicable definition.

given in all the courts of this state to a judgment of annulment of marriage, divorce or legal separation by a court of competent jurisdiction in another state, territory or possession of the United States, when the jurisdiction of such court was obtained in the manner and in substantial conformity with the conditions prescribed in s. 247.05. Nothing herein contained shall be construed to limit the power of any court to give such effect to a judgment of annulment, divorce or legal separation, by a court of a foreign country as may be justified by the rules of international comity. No person domiciled in this state shall go into another state, territory or country for the purpose of obtaining a judgment of annulment, divorce or legal separation for a cause which occurred while the parties resided in this state, or for a cause which is not ground for annulment, divorce or legal separation under the laws of this state and a judgment so obtained shall be of no effect in this state."

Sec. 247.22, Stats., provides:

"247.22 **Uniform divorce recognition act.** (1) A divorce obtained in another jurisdiction shall be of no force or effect in this state, if both parties to the marriage were domiciled in this state at the time the proceeding for the divorce was commenced.

" (2) Proof that a person obtaining a divorce in another jurisdiction was (a) domiciled in this state within 12 months prior to the commencement of the proceeding therefor, and resumed residence in this state within 18 months after the date of his departure therefrom, or (b) at all times after his departure from this state, and until his return maintained a place of residence within this state, shall be prima facie evidence that the person was domiciled in this state when the divorce proceeding was commenced."

The unequivocal declaration of legislative policy in sec. 247.21, Stats., is that no judgment of divorce is of effect in this state when a person domiciled in this state goes into another country for the purpose of obtaining a divorce for a cause which occurred in Wisconsin or for a cause which is not a ground for divorce under the laws

of this state. "Incompatibility of temperaments" is not a ground recognized in Wisconsin.

The facts are undisputed that, although there was sufficient compliance with the laws of the state of Chihuahua to give that court jurisdiction, there was never any residence in Mexico by either Priscilla Lane or Crockett Lane. There is not even an assertion by the appellants that either party was ever "domiciled" in Mexico. We do not pass upon the effect of sec. 247.22, Stats., as applicable to a decree rendered in another state of the United States;[2] but as an expression of public policy, it is apparent that, under sec. 247.22, comity cannot be accorded a Mexican decree where no domicile existed in that foreign jurisdiction. Sec. 247.22 is, in substance, a portion of the Uniform Divorce Recognition Act promulgated by the National Conference of Commissions on Uniform Laws in 1948. In a comment to the Uniform Divorce Recognition Act, the commissioners stated:

"It should be emphasized that the aim of this proposal is to preserve to each state the authority to determine the marital status of its own domiciliaries to the fullest extent possible under existing constitutional doctrine." 9 Uniform Laws Annotated, p. 361.

There is no constitutional requirement that Wisconsin give recognition to a Mexican decree affecting the marital status of Wisconsin domiciliaries. The appellants in this case argue, however, that sec. 247.21, Stats., does not bar the application of a doctrine of comity to a divorce decree. They are correct in that assertion. This court, under the common law and under the rules of comity, may give recognition to a decree even though it is not compelled to do so by the "full faith and credit"

---

[2] *See, Hartenstein v. Hartenstein* (1963), 18 Wis. 2d 505, 118 N. W. 2d 881, for conflict of sec. 247.22, Stats., with constitutional mandate of "full faith and credit."

clause of the United States Constitution. However, the Wisconsin statute (sec. 247.21) provides that such recognition can be accorded if "justified by the rules of international comity." As pointed out above in the quotation from *Hughes v. Fetter*, rules of comity prohibit according effect to a foreign decree when to do so would be to approve a policy contrary to the laws of this state, prejudicial to the interests of its citizens, or against good morals. The policy and moral determination has been made by the legislature, and this court is obliged to adhere to that policy.

Although the question of the constitutionality of sec. 247.21, Stats., was not argued or passed upon by the trial court, we have permitted the appellants to raise the question on appeal. Counsel argues that the statute is unconstitutional because it interferes with the constitutionally guaranteed right to travel.

The situation posed in this case is unlike cases cited by the appellants which hold unconstitutional various durational residence requirements for the purpose of gaining residency for voting or eligibility for welfare. The Wisconsin statute in question merely provides that Wisconsin domiciliaries cannot evade or avoid the effect of Wisconsin laws affecting marital status while they remain and continue to be domiciliaries of Wisconsin.

Appellants urge that we adopt the doctrine of comity recognized by the Court of Appeals of the state of New York in *Rosenstiel v. Rosenstiel* and *Wood v. Wood* (1965), 16 N. Y. 2d 64, 262 N. Y. Supp. 2d 86, 209 N. E. 2d 709, certiorari denied (1966), 384 U. S. 971, 86 Sup. Ct. 1861, 16 L. Ed. 2d 682, and 383 U. S. 943, 86 Sup. Ct. 1198, 16 L. Ed. 2d 206. Whatever the sociological wisdom of the policy adopted in *Rosenstiel*, the policy of Wisconsin is specifically expressed by our statutes. New York is not a signatory to the Uniform Divorce Recognition Act and stands alone in its position as stated in *Rosenstiel*.

In the absence of a revised legislative declaration of public policy, this court declines to extend comity to a divorce obtained in Mexico under the circumstances of this case.

It should be noted, however, that sec. 245.24, Stats., provides that, even where a subsequent marriage was invalid because of a prior defective divorce, a subsequent living together as husband and wife in good faith after the death of a party from whom a divorce was not validly obtained will be validated in the event of the death of that other party. The record is silent, however, in respect to the present whereabouts or vitality of Crockett Lane. In the event that he predeceased Wesley Steffke, the disability to the marriage of Wesley Steffke and Priscilla Lane would have been removed, and the marriage under those circumstances would be valid. There is, however, no evidence of such subsequent validation.

The Mexican divorce granted to Priscilla Lane in 1966 is of no effect in the state of Wisconsin. She was not the wife of Wesley Steffke under the laws of the state of Wisconsin and is not entitled to the benefit of inheritance tax rates applicable to a widow of a decedent.

*By the Court.*—Order affirmed.