ESTATE of Wesley A. STEFFKE, Deceased.

WISCONSIN VALLEY TRUST COMPANY and Priscilla Baker (Lane) Steffke, co-executors, Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Appellee.

No. 75–2161.

United States Court of Appeals, Seventh Circuit.

Argued April 16, 1976.

Decided June 24, 1976.

Leonard F. Schmitt, Merrill, Wis., for appellants.

Meade Whitaker, Scott P. Crampton, Asst. Atty. Gen., William S. Estabrook, III, Atty., Tax Div., Dept. of Justice, Washington, D. C., for appellee.

Before FAIRCHILD, Chief Judge, PELL, Circuit Judge, and NOLAND, District Judge.*

PELL, Circuit Judge.

The issue in this appeal from a judgment of the Tax Court is the meaning of the term "surviving spouse" as used in section 2056(a) of the Internal Revenue Code of 1954.[1]

The facts in this case are undisputed. In 1944 Priscilla Baker married Crockett W. Lane. At all relevant times they resided in Wisconsin. In 1966 she obtained a judgment of divorce in a Mexican court. Before obtaining this judgment, she entered a personal appearance and complied with the jurisdictional requirements prescribed by Mexican law. Crockett did not go to Mexico but appeared through counsel. The judgment was based on grounds not recognized under Wisconsin law, but it has never been set aside by the Mexican court which entered it. In January of 1967, the decedent, Wesley Steffke, executed a will which provided that the bulk of his estate would pass to his "friend, Priscilla Baker Lane." In July of that year Priscilla and decedent were married. The decedent died in November of 1968. Following his death, the Supreme Court of Wisconsin was presented

---

* Honorable James E. Noland, United States District Judge from the Southern District of Indiana, is sitting by designation.

1. All statutory citations in this opinion are to the Internal Revenue Code of 1954, 26 U.S.C., unless otherwise indicated.

with the question of whether the property passing to Priscilla should be taxed under the Wisconsin inheritance tax at rates applicable to widows or at rates applicable to strangers. In deciding this issue, the Wisconsin Supreme Court held that the Mexican divorce was of no effect in the state of Wisconsin and that Priscilla was not the wife of decedent under the laws of Wisconsin. *In re Estate of Steffke,* 65 Wis.2d 199, 222 N.W.2d 628 (1974).

The decedent's estate claimed the marital deduction under section 2056 on the estate tax return. The Commissioner disallowed the deduction on the grounds that Priscilla was not decedent's surviving spouse. The estate petitioned the Tax Court to determine the issue, and in due course the court ruled in favor of the Commissioner.[2] This appeal followed.

■ Section 2056 allows the deduction from a decedent's gross estate of an amount equal to the value of any interest in property passing from a decedent to a surviving spouse to the extent the interest is not a terminable one and to the extent the value of the interest passing does not exceed fifty percent of the adjusted gross estate. The term "surviving spouse" is neither defined in the section nor elsewhere in the Internal Revenue Code.

The meaning of the words or the legal status of circumstances for federal tax purposes need not be identical to their meaning or their legal effect under state law. *See Commissioner v. Tower,* 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670 (1946); *Lyeth v. Hoey,* 305 U.S. 188, 59 S.Ct. 155, 83 L.Ed. 119 (1938). In *Lyeth* the Supreme Court indicated that it is the will of Congress that controls the meaning of the taxation statutes and that in the absence of language evidencing a different purpose, the statutes should be interpreted so as to produce a uniform result nationwide. According to the Court, state law can only control "when the federal taxing act by express language or necessary implication makes its operation dependent upon state law." 305 U.S. at 194, 59 S.Ct. at 158.

The taxpayer's principal argument in this case is that uniformity can best be achieved by applying the holdings of *Borax v. Commissioner,* 349 F.2d 666 (2d Cir. 1965), *cert. denied,* 383 U.S. 935, 86 S.Ct. 1064, 15 L.Ed.2d 852 (1966); *Wondsel v. Commissioner,* 350 F.2d 339 (2d Cir. 1965); and *Feinberg v. Commissioner,* 198 F.2d 260 (3d Cir. 1952). These cases were income tax cases, but the taxpayer argues that the same logic and principles apply in the estate tax context.

In *Borax* the Commissioner asserted deficiencies for the years 1952 through 1955 and 1957 against Herman and Hermine Borax, who had filed joint returns and had deducted payments made by Herman to his former wife, Ruth. Herman and Ruth had separated by mutual consent in 1946 and had entered a separation agreement. In August 1952, Herman obtained a divorce in Mexico. Ruth did not appear in the Mexican proceedings. Later that month Herman married Hermine. In 1953 a New York court entered a decree declaring that Ruth was the lawful wife of Herman, that Herman and Hermine were not husband and wife, and that the Mexican divorce decree was invalid and of no force or effect. The New York court had jurisdiction over Herman and Hermine. Each had been personally served and participated in the New York proceedings with counsel. In deciding the case, the Second Circuit established a rule that it characterized as a rule of validation. The rule provided:

> The subsequent declaration of invalidity [of a divorce] by a jurisdiction other than the one that decreed the divorce is of no consequence under these provisions of the tax law.

349 F.2d at 670. The court first pronounced the rule when discussing the issue of the deductibility of payments made in discharge of a legal obligation incurred incident to a divorce, but it later applied the rule to allow Herman and Hermine to file joint returns. The court indicated that the rule tended to promote uniformity because all

---

2. The opinion of the Tax Court is reported at 64 T.C. 530.

persons who obtained a divorce in a particular jurisdiction would be treated in the same way under it regardless of whether someone invoked the power of another jurisdiction to have the decree declared invalid.

In *Wondsel* the same court reached a similar result on similar facts. The divorce not recognized by New York in *Wondsel* was granted by Florida rather than a foreign country but was not entitled to full faith and credit because the New York court found that the Florida court lacked jurisdiction.

*Feinberg* also involved the deductibility of payments made incident to a divorce decree. *Feinberg* was decided by the Third Circuit before the Second Circuit annunciated its rule of validation, but the court reached the same result. It indicated that the mere fact that the marital domicile of the parties did not recognize a Florida divorce did not render it a nullity for federal income tax purposes.

These decisions have not received a favorable reception from either the Commissioner or the Tax Court, at least where taxpayers have tried to extend the holdings to an estate tax situation.

In Rev.Rul. 67–442, 1967–2 Cum.Bull. 65, the Commissioner indicated that the Service would not follow *Borax* and *Wondsel* for estate tax purposes. The ruling indicated that the Service would not question a divorce decree unless it had been declared invalid but that if a decree were declared invalid by a court with jurisdiction over the parties, the Service would follow the later decision. This appears to have been the consistent view of the Service. In *Feinberg* the Third Circuit indicated that General Counsel Memorandum 25250, 1947–2 Cum. Bull. 32, supported its position. In the Memorandum the General Counsel indicated that a taxpayer could deduct alimony payments which were paid on the basis of a separation agreement but after a Mexican divorce was obtained by one of the parties.[3] Under the facts posited, it appeared unlikely that the divorce would have been recognized by the taxpayer's state of domicile; but the divorce had not been declared invalid, and the parties relied on the decree by remarrying. The Service indicated in Rev. Rul. 67–442, as it had in Rev.Rul. 57–113, 1957–1 Cum.Bull. 106, that the Memorandum was not intended to recognize Mexican decrees over subsequent decrees in other jurisdictions. The Second Circuit in *Borax* indicated that the Commissioner had taken a position in Rev.Rul. 58–66, 1958–1 Cum. Bull. 60, which conflicted with his position in that case. In Rev.Rul. 58–66 the Commissioner indicated that the marital status of individuals as determined by state law would be recognized for federal income tax purposes. It then applied this rule to the situation where parties initiate a common law marriage in a state which recognizes such a relationship and later move to a jurisdiction which requires a ceremony. It held that such persons may take the dual allowance for personal exemptions and file a joint return. We do not conceive that this Rev.Rul. conflicts with the position taken by the Commissioner in the present case.

The Tax Court has distinguished *Borax* in two recent cases other than the one at bar. In *Estate of Goldwater v. Commissioner*, 64 T.C. 540 (1975), *appealed* 539 F.2d 878 No. 75–4277 (2d Cir.), the Tax Court refused to recognize a Mexican divorce in the face of a declaratory judgment entered in favor of decedent's first wife, holding that she remained his lawful wife. The court allowed the marital deduction to the extent property passed to his first wife by reason of her elective share under state law but denied the deduction to the extent property passed under decedent's will to the person who purported to be his wife at the time of his death. In *Estate of Spaulding v. Commissioner*, 34 CCH Tax Ct Mem ¶ 33,360 (1975), *appealed* No. 75–4248 (2d Cir.), the Tax Court followed its decision in *Goldwater* and in the case at bar to deny the marital deduction to the estate of the purported wife of a New York resident who had been divorced in Nevada but which divorce had

---

3. At the time the Memorandum was issued, payments of the nature involved could be deducted after divorce. Separation was not sufficient.

been declared invalid by a New York court. At the time of decedent's death, she was a resident of California; but the court ruled that this did not change the result, because since all relevant parties had participated in the New York proceedings which resulted in the declaration that the divorce was invalid, California was required by *Sutton v. Leib*, 342 U.S. 402, 72 S.Ct. 398, 96 L.Ed. 448 (1952), to give the New York judgment full faith and credit and under California precedent would do so. The Tax Court has consistently maintained the view that marital status is defined by state law. *Estate of Lee v. Commissioner*, 64 T.C. 552 (1975), *appealed* (9th Cir.). *See Gersten v. Commissioner*, 28 T.C. 756 (1957), *aff'd in relevant part*, 267 F.2d 195 (9th Cir. 1959); *Eccles v. Commissioner*, 19 T.C. 1049 (1953), *aff'd per cur. for the reasons stated in the Tax Court opinion*, 208 F.2d 796.

There is support in opinions of courts of appeals for the distinction between income taxation and estate taxation. In *Borax* the Second Circuit did not rely solely on the goal of uniformity. On the contrary, it stated that the goal of uniformity might not alone be sufficient to justify the rule of validation. 349 F.2d at 670. It then indicated that the rule would further the Congressional purpose of allowing deductions where parties cease living together as husband and wife but would not interfere with any other tax policy. The court was influenced by the changes in the 1954 code which would allow the deduction of support payments incident to an agreement of separation but which did not apply to the transactions before the court because they occurred before the effective date of the changes. Courts have in other contexts followed state law for purposes of estate taxation even when it would not apply to connected transactions for purposes of income taxation. *See Aldrich v. United States*, 346 F.2d 37 (5th Cir. 1965).

This court must analyze the meaning of the term "surviving spouse" in section 2056 in light of Congressional estate taxation purposes and only give limited weight to meanings other courts have ascribed to the term in other contexts. No one argues that Congress intended to create a body of federal marital law wholly independent from state law. The real issue which this court must decide in the present case is not whether to apply state or federal law; it rather must decide which jurisdiction's law should be recognized where a judgment of one jurisdiction is adjudged to be without validity in the controlling taxation jurisdiction although concededly the first judgment would have been recognized and sustained in other jurisdictions.

As indicated by the Tax Court's opinion in this case, section 2056 is intimately related to the law of the state where a decedent's estate is administered and where his property is located. The Tax Court carefully analyzed the various subdivisions of section 2056 and, citing various authorities, showed how they were connected with state law. A few of the more important examples are sufficient to demonstrate the nexus.

Section 2056 was primarily directed at equalizing the burden of estate taxes between residents of common law and community property states. In *United States v. Stapf*, 375 U.S. 118, 84 S.Ct. 248, 11 L.Ed.2d 195 (1963), the Supreme Court stated the purpose of the amendments to the Internal Revenue Code which now appear in section 2056:

> The 1948 tax amendments were intended to equalize the effect of the estate taxes in community property and common-law jurisdictions. Under a community property system . . . the spouse receives outright ownership of one-half of the community property and only the other one-half is included in the decedent's estate. To equalize the incidence of progressively scaled estate taxes and to adhere to the patterns of state law, the marital deduction permits a deceased spouse, subject to certain requirements, to transfer free of taxes one-half of the non-community property to the surviving spouse. Although applicable to separately held property in a community property state, the primary thrust of this is to

extend to taxpayers in common-law States the advantages of "estate splitting" otherwise available only in community property States.

*Id.* at 128, 84 S.Ct. at 255 (footnote omitted). How the section operates depends on whether property is community property or separate property. This, in turn, depends on the law of the parties' domicile. If a person's estate contains community property interests, the estate's interest is deducted from the gross estate under section 2056(c)(2)(B) to arrive at the adjusted gross estate so that the estate will not receive the benefits of section 2056.

Section 2056(e) defines when an interest in property will be considered to have passed within the meaning of the section. Each of the ways listed is dependent on state law, *e. g.*, by will, by intestacy, by dower, or by joint tenancy with the right of survivorship. State law also determines the nature of the property interest passing for purposes of the terminable interest rule of section 2056(b).

 In light of these connections between section 2056 and the law of the state where decedent's property is administered and the Congressional purposes in enacting the section, we hold: When there are conflicting judicial decrees regarding the validity of a divorce, the decision should be followed for federal estate taxation purposes that would be followed by the state which has primary jurisdiction over the administration of a decedent's estate, *i. e.*, the jurisdiction in which the decedent was domiciled at the time of his death. This appears to be the position of the Tax Court, as indicated by its decisions in *Estate of Goldwater, supra*, 64 T.C. at 550, and *Estate of Spaulding, supra*, 34 CCH Tax Ct Mem at 1076. The position of the Commissioner, as represented by Rev.Rul. 67–442, *supra*, is that he will follow the last judicial decree by a court which has jurisdiction over the relevant parties. Though his rationale is not entirely clear, it appears his reason is that this would be the judgment entitled to full faith and credit by other states.

We note that while the rule we adopt works to the taxpayer's detriment in this case, the uniform application of the rule, which we would perceive to be required, could operate to deprive the Government of taxes in other situations. Thus, if Priscilla had predeceased Steffke, Wisconsin law would have put Crockett in the position of the surviving spouse. If, in such event, she had died intestate, then to the extent that Crockett would have inherited from her, the taxpaying estate would have been entitled to claim the marital deduction within the statutory limitation of amount. That it might not have been her desire that Crockett inherit from her is immaterial in determining the extent to which her estate would be subject to estate tax. Her wishes in respect to those who would share in her estate would have been within her control by the process of testamentary disposition, just as the matter of the taxability of Steffke's could have been controlled by her seeing to it that the severance from Crockett was one which would be recognized by the state of her domicile.

The estate in the present case relies on language in the Government's brief and language from the Senate Report on the bill which became section 2056 as providing an independent basis for allowing the marital deduction in this case. The Senate Report provides:

The status of an individual as the decedent's surviving spouse is determined at the time of the decedent's death. A legal separation which has not (at the time of the decedent's death) terminated the marriage does not affect such status for the purposes of section 812(e)(1). . . .

Sen.Rep.No.1013 (Part 2) 80th Cong.2d Sess. at 6, 1948–1 Cum.Bull. 331, 335. The Government in another context paraphrases the report as indicating that judicial actions which have not terminated a marriage at the time of decedent's death have no effect on an individual's status as a surviving spouse. Citing *Davidson v. Davidson*, 35 Wis.2d 401, 151 N.W.2d 53 (1967), the estate argues that a purported marriage under

Wisconsin law at a time when one of the parties has another spouse is voidable, not void, and that since decedent's marriage had not been declared invalid prior to his death, it must be treated as a valid marriage.

This court might properly consider this argument waived since it was neither presented to the Tax Court nor to this court in the estate's opening brief. The estate also had the opportunity to raise the issue before the Wisconsin Supreme Court so that it could rule on the exact meaning of *Davidson*, but it did not do so. We, nevertheless, have considered the argument and find it to be without merit.

*Davidson* was an action to annul a marriage. The action was brought by defendant's purported wife before her death, and her estate sought to continue the action so as to obtain certain property. She and the defendant purported to become married several months before defendant's divorce from his first wife became final. Section 245.03(1) of the Wisconsin statutes then provided that it was unlawful for a person to marry within one year of a divorce judgment and that if a person attempted to marry within that time, the marriage was void. Section 245.02 defined "void" as used in the statutes to mean "null and void and not voidable." Section 245.24 indicated that under certain circumstances the law would treat a marriage as valid upon the removal of impediments such as the ones facing the parties in the *Davidson* case. The court held that notwithstanding the language of section 245.02, the marriage was voidable, not void, since it could be made valid. It further held that the marriage became valid at the time the impediments were removed, *i. e.*, one year after defendant's divorce became final, and therefore dismissed the action.

In the course of its opinion, the court quoted from 35 Am.Jur. *Marriage* § 57 at 220 (1941):

A marriage which is merely voidable, however, is valid for all purposes until avoided or annulled in a proper proceeding during the lifetime of the parties.

On the death of either spouse, the marriage cannot be impeached, and is made good ab initio.

151 N.W.2d at 55 n.1 Am.Jur., however, continues:

Of course, strictly speaking, a voidable marriage not annulled during the lifetime of the parties does not become valid by the death of one of the parties thereto, but rather becomes merely effective in that it can no longer be attacked. In other words . . . if [it is] not avoided during the lifetime of the parties in a proper proceeding, it has certain civil effects which cannot longer be controverted.

35 Am.Jur. *Marriage* § 57 at 220 (1941). (Footnote omitted.)

■ In the present case the Wisconsin Supreme Court was not faced with an annulment action in which one of the parties was attempting to roll back the clock and redefine property rights; rather, it was faced with the problem of determining the legal status of the parties at a time in the past so as to determine the appropriate inheritance tax rate to be applied in the present. The Wisconsin Court decided the issue. Since the parties did not argue the issue, we must assume that the court was conversant with its own precedent and can only conclude that the parties' tax status is not under the law of Wisconsin one of the "certain civil effects which cannot longer be controverted" after the death of a party.

In the construction of tax statutes, neither the Tax Court, nor this court in review, is sitting in the capacity of balancing the equities of a particular situation. The very phrase "avoidance of taxes," a legal objective, connotes that the same tax consequences do not necessarily flow from similar, but not identical, treatments of property and relationships. If we were deciding this case on some sort of a Solomonic basis, we could agree with the appellant that the result appears harsh when it is considered that this couple, who undertook the vows of marriage in a legal ceremony in Wisconsin and continued for more than a year apparently in the good faith belief that their

relationship was not illicit, could have had no taint on their marriage if they had been domiciled in a state not many miles distant.

 Congress, aware of an unfair discrepancy between the consequences of taxation on married couples in community property law states and those in common law states, achieved a similarity of treatment by providing for the utilization of the marital deduction. We find nothing in the Code, however, dispensing with the necessity of the existence of the legal status of the marriage as a prelude to there being a surviving spouse situation. The plain meaning of the words "surviving spouse" can have no other meaning than that the person not only outlived but bore a particular relationship, here that of being a legal spouse.

It had been no unfathomable secret that hastily achieved divorces in foreign climes were suspect. Indeed, Steffke, for some reasoning not appearing in the record, himself secured a Wisconsin divorce subsequent to his own earlier Mexican decree. In the case before us the situation is not merely one in which there may have been a question as to the validity of foreign divorces generally, but here the highest court of the state of domicile specifically has held that the Steffkes at the time of his death were not spouses, thereby precluding the one who outlived from claiming to be a surviving spouse.

The underlying tenor of the appellants' argument would seem to be that the uniformity sought by Congress between community property law and common law states should be extended to any situation where more favorable treatment was given to taxpayers in another state. Counsel for the appellants conceded during oral argument that this extension would be equally applicable to a couple who purported to have engaged in a common law marriage in a state not recognizing this relationship if in fact other states would have considered the couple validly married. The application of principles of logic, however, has had no conspicuous place in the construction of taxation statutes.

It appears to us that Congress has achieved a simplistic uniformity by requiring one claiming to be a surviving spouse to be in law exactly that and to us "in law" does not mean what might have been true someplace else.

Perhaps the mores of the times do not place the high value on the sanctity of the continuance of the marital status as in previous years; but no matter how easily the status may now be discontinued, we are not presently persuaded when the state having the primary jurisdiction over a decedent's estate has specifically determined that a divorce elsewhere has provided no basis for a legal marriage, we can nevertheless say a marriage exists which would permit a spouse to survive upon the death of one.

Accordingly the judgment of the Tax Court is

Affirmed.