# COURT OF APPEALS
## DECISION
## DATED AND FILED

## June 28, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1835**

STATE OF WISCONSIN

Cir. Ct. No. 2018FA5322

IN COURT OF APPEALS
DISTRICT I

REHAM M. OKAB,

PETITIONER-RESPONDENT,

V.

BAHA Y. HAMDAN,

RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Milwaukee County: THOMAS J. McADAMS, Judge. *Affirmed in part; reversed in part and cause remanded for further proceedings*.

Before Brash, C.J., Dugan and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  Baha Y. Hamdan appeals the circuit court order determining the Findings of Fact, Conclusions of Law, and Judgment of Divorce from Reham M. Okab.  Hamdan argues that the circuit court erred in its child support calculations with regard to tax exemptions for their three children and extraordinary travel expenses, when it held open maintenance for eight years, and when it did not give him notice that Okab would be awarded a USB drive in the property division.  We conclude that the tax exemptions and travel expenses are intertwined issues for which the circuit court made inadequate findings.  However, we affirm the maintenance order and the property division.  Therefore, we reverse in part and remand to the circuit court for further proceedings.

## BACKGROUND

¶2    It is undisputed that Hamdan and Okab were married in Amman, Jordan in September 2005.[1]  They had three children together, one born in 2006, another in 2010, and the youngest in 2015.  On September 5, 2018, Okab petitioned the circuit court for a divorce.  In response in October 2018, Hamdan moved to dismiss the divorce because he argued they had already been divorced in Jordan, in compliance with Jordanian law, on September 12, 2018.  However, Hamdan informed the court that he was interested in having "the court help us in reaching agreement regarding our child[] custody, placement and any other details related to the kids."

---

[1] We note that the record before us includes only one transcript, which Okab moved to supplement the record to provide, after Hamdan stated that transcripts were unnecessary to decide this case.  Therefore, we rely on the submissions of the parties and the circuit court's written orders, along with that sole transcript, to describe the facts.  "An appellate court's review is confined to those parts of the record made available to it."  *State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

¶3     On October 29, 2018, Hamdan and Okab appeared before a court commissioner, who signed a Findings and Order relating to Okab's petition for a temporary order and Hamdan's motion to dismiss. Hamdan asserted that he filed for divorce in Jordan in August 2018, with his brother as his proxy and Okab's sister in Jordan receiving service of papers, and a Jordanian court granted the divorce on September 12, 2018. Okab, by her attorney, asserted that she was aware than Hamdan filed a divorce in Jordan and there were papers "sent to her sister in Jordan," and that these papers may have been an attempt to substitute service, however, such service would not be adequate under Wisconsin law because there had been no attempts to have Okab served personally. The court commissioner concluded that an evidentiary hearing was necessary to determine whether there was a valid divorce in Jordan.

¶4     An evidentiary hearing was held on January 23, 2019; in a written order, the circuit court deferred the question "about whether to grant a divorce to the parties under Wisconsin law" and whether the Jordanian divorce was controlling.[2] Further, the court found that "[b]oth parties agree that whether or not the divorce is granted in Wisconsin, they do want orders made regarding custody, placement, child support, and maintenance and property division."

¶5     On February 22, 2019, the parties appeared for a status conference. At that conference, there was a discussion about the validity of the Jordanian divorce and jurisdiction in Wisconsin:

---

[2] The Honorable Thomas J. McAdams presided over the majority of the hearings and status conferences, conducted the trial, addressed the motion for reconsideration, and issued the order granting the judgment of divorce. We refer to Judge McAdams as the circuit court. The Honorable Michael J. Dwyer presided over a status conference on February 22, 2019. We refer to Judge Dwyer as the trial court.

> MR. HAMDAN: Your Honor, I am requesting now changing of venue with my divorce, that I need—I am requesting to go ahead with the divorce in Wisconsin and disregard whatever divorce I had in the past.
>
> THE COURT: Okay. That would make things much easier.
>
> MR. HAMDAN: Okay.
>
> THE COURT: Mr. Hamdan, I want to be certain, that is a very important legal decision. And if you are willing to make it, I am willing to make it a final decision.
>
> MR. HAMDAN: Yes.
>
> THE COURT: But I want to be sure that you're certain.
>
> MR. HAMDAN: Yes, yes, Your Honor.
>
> ….
>
> THE COURT: Okay. To be clear, I find that the parties agree … [t]hat neither party will rely on the divorce proceedings that occurred in Jordan between the parties.
>
> MR. HAMDAN: Yes, I heard that.
>
> THE COURT: Okay. And that's a final order.

After further discussion, the trial court found that Hamdan "submitted himself to the jurisdiction of the Wisconsin court" to proceed with the divorce. Shortly after the hearing, the circuit court issued a written order memorializing that "neither party will rely on the divorce proceedings that occurred between the parties in Jordan in this case" and that "[b]oth parties agree that the divorce proceedings will continue in the State of Wisconsin and the [c]ourt finds that Mr. Hamdan submits to the jurisdiction of Wisconsin courts."

¶6     After a pre-trial conference and several status conferences, the circuit court conducted a trial on February 4, 2020, and February 10, 2020. The

court issued a written decision after trial on April 10, 2020.[3]  The court found that Hamdan's brother obtained a divorce in Jordan on Hamdan's behalf, without any notice to Okab.  Hamdan then filed the Jordanian divorce documents with the circuit court.  The court concluded that it would proceed with the case under Wisconsin law "because of the obvious procedural problems with due process and the lack of provisions ensuring the welfare of the children, who are Wisconsin residents."  The court made factual findings setting the proper child support payments, including having Okab responsible for 100% of the variable costs and Hamdan responsible for 100% of the travel costs.  Next, the court awarded tax exemptions for all of the children to Okab "in an attempt to achieve a rough balance in available annual incomes" based on the submitted financial statements.  Additionally, the court ordered maintenance for Okab be held open for eight years.  Finally, the court ordered property division of their monetary assets and ordered Hamdan to give to Okab a USB drive with photographs.

¶7      Hamdan moved the court to reconsider its decision.  The court issued a written decision granting the motion in part in July 2020.  The court ordered that a bank account it had split evenly in the first decision properly belonged to Hamdan.  It continued to give the tax exemptions to Okab, but it did allow for the decision to be revisited in future reviews.  The court denied reconsideration on Hamdan's additional arguments because his arguments were not based on new information or mistakes of fact or law, thus, there was not a basis for reconsideration.  However, as a result of the change in the bank account

---

[3] No transcripts from the trial were included in the record, except for the transcript that was added via our order to supplement the record.  The decision by the circuit court is unsigned, but no party has raised a concern about this, so we do not address it further.

assignment, the court allowed for a health insurance offset to child support and reduced the child support arrears.

¶8    Based on the court's written order, Hamdan and Okab submitted proposed divorce orders in July 2020, with a final Findings of Fact, Conclusions of Law, and Judgment of Divorce drafted by Okab signed on October 15, 2020.

¶9    Hamdan appeals.

## DISCUSSION

¶10    Hamdan argues that the circuit court erred in several key ways. First, he argues that the circuit court erred in its equalization of the child support, travel expenses, and child tax exemptions.  Child support and property division determinations within divorce proceedings are within the sound discretion of the circuit court discretion and will not be reversed absent an erroneous exercise of discretion. *Eau Claire Cnty. Child Support Agency v. Welter*, 2006 WI App 54, ¶4, 289 Wis. 2d 857, 711 N.W.2d 705; *Steinmann v. Steinmann*, 2008 WI 43, ¶20, 309 Wis. 2d 29, 749 N.W.2d 145.  Second, he argues that the circuit court should not have ordered maintenance be held open for eight years because the court lacked jurisdiction over the divorce.  The question of jurisdiction over the divorce is a question of law that we review independently.  *See McAleavy v. McAleavy*, 150 Wis. 2d 26, 31, 440 N.W.2d 566 (1989).  Third, he argues that the circuit court erred when it awarded a USB drive to Okab without notice to Hamdan.  Whether notice and due process are satisfied is a question of law we review independently.  *See Estate of Hagenstein ex rel. Klemmer v. DHFS*, 2006 WI App 90, ¶16, 292 Wis. 2d 697, 715 N.W.2d 645.

## I. *Child support determination*

¶11 Hamdan argues that the circuit court erred in its income equalization determinations. He asserts that half of his extraordinary travel expenses should be offset from his child support payments. Further, he contends that as the higher income parent paying child support, the court should have allocated the tax exemptions to him.

¶12 The calculation of child support is derived from the statutory formula. *See* WIS. STAT. § 767.511(1j) (2019-20).[4] However, the court may deviate from the standards by considering the factors in § 767.511(1m). If the court reaches the conclusion that deviation is appropriate, the court is required to "state in writing or on the record" the standard amount of support under the statutory formula, "the amount by which the court's order deviates from that amount, its reasons for finding that use of the percentage standard is unfair to the child or the party, its reasons for the amount of the modification and the basis for the modification." Sec. 767.511(1n).

¶13 In the written decision approving the motion to reconsider, the court ordered child support at $34,320 per year, which was based on the standard formula.[5] The court acknowledged that Hamdan's requested deviations for extraordinary travel expenses and tax consequences were among the factors under

---

[4] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[5] The initial court decision sets child support at $2,860 per month ($660 per week or $34,320 per year) from Hamdan to Okab. This amount was calculated under the high-income guidelines under WIS. ADMIN. CODE § DCF 150.04(5) with shared placement at 71% for Okab and 29% for Hamdan.

consideration for a modification of the standard calculations. *See* WIS. STAT. § 767.511(1m). Therefore, the court must set forth its reasoning on the record as a basis of any modification. *See* ***McLaren v. McLaren***, 2003 WI App 125, ¶16, 265 Wis. 2d 529, 665 N.W.2d 405.

¶14 An appellate review of the fairness of a child support calculation, property division, or other financial valuations in a divorce depends heavily on the circuit court record. *See* ***Perrenoud v. Perrenoud***, 82 Wis. 2d 36, 50, 260 N.W.2d 658 (1978). Here, the circuit court's findings do not adequately set forth its reasoning. When faced with inadequate findings, this court "may adopt one of three courses: (1) [a]ffirm the judgment if clearly supported by the preponderance of the evidence, (2) reverse if not so supported, or (3) remand for the making of findings and conclusions." ***Vier v. Vier***, 62 Wis. 2d 636, 639, 215 N.W.2d 432 (1974). As our supreme court has noted, remand for adequate fact finding is especially helpful in family law cases. ***Id.***

¶15 Our review of the record shows that the circuit court feared that reducing the child support would not leave Okab and the children enough to live on. That is a fair concern; however, the court must make findings addressing the intertwined nature of the statutory child support and any modifications to the standard rates for considerations including health insurance, tax concerns, and travel expenses. The judgment insofar as it relates to the financial considerations of the parties is reversed and the cause is remanded to the circuit court to set forth all facts and factors which it considered in reaching its determinations. "Upon a review of the record the [circuit] court may conclude that there is an inadequate basis for making the findings required, and the [circuit] court may reopen the case and take additional testimony, if it so elects." *See* ***Perrenoud***, 82 Wis. 2d at 50. Although we have commented on the need to consider Hamdan's requested

modifications, we do not decide whether the circuit court must reach a different conclusion as to the ultimate financial determinations in this case. *See id.*

## II. *Jurisdiction and the question of maintenance*

¶16 Hamdan contends that the circuit court erred to hold maintenance open for eight years because the court lacked jurisdiction over the divorce. Hamdan argues that the issue of maintenance is one that should be resolved as part of the divorce granted by the court in Jordan and that Okab has rights to pursue maintenance under that decree. We do not interpret Hamdan to argue that this court lacked jurisdiction over child custody, placement and support. Further, we do not interpret his argument as asserting that this court lacked jurisdiction over the property division. However, Hamdan's argument regarding maintenance fails because the record reflects that Hamdan submitted to Wisconsin jurisdiction for the divorce proceedings—and the consideration of maintenance is an issue of divorce in Wisconsin—and because there is no legal compulsion for Wisconsin to recognize foreign judgments. *See **Estate of Steffke v. DOR***, 65 Wis. 2d 199, 202, 222 N.W.2d 628 (1974).[6]

---

[6] A Wisconsin court "may recognize a judgment in any action affecting the family involving Wisconsin domiciliaries … by a court of competent jurisdiction in a foreign country, in accordance with the principles of international comity." WIS. STAT. § 767.041(2). Comity is a rule that allows the court to decline to recognize a foreign decree if it is "against policy or laws of the state, prejudicial to the interests of its citizens or against good morals and natural justice." ***Estate of Steffke v. DOR***, 65 Wis. 2d 199, 203, 222 N.W.2d 628 (1974) (citation omitted). The record reflects that Okab attested that she was not served with regard to the Jordanian divorce. Although substitutes to personal service are allowed with reasonable diligence under WIS. STAT. § 801.11(1), Hamdan makes no record that Okab was served personally or served by an acceptable method under Wisconsin law. Without service of the divorce action in Jordan on Okab, the circuit court was not required to recognize the Jordanian divorce or consider it controlling. *See **Hansen v. McAndrews***, 49 Wis. 2d 625, 630, 183 N.W.2d 1 (1971). "It is well settled that without proper service of process no full faith and credit need be accorded a foreign judgment; in fact, the requirements of due process militate against according such, and the judgment may then be collaterally attacked." *Id.* (footnotes omitted).

¶17    The record reflects that Hamdan repeatedly acknowledged he submitted to Wisconsin's jurisdiction over the divorce action, child custody, support, and property division.  If we interpret his argument as seeking to carve out an exception for maintenance as separate from the other actions affecting the family in the divorce, then his argument fails.  "The circuit courts have jurisdiction of all actions affecting the family…."  WIS. STAT. § 767.01(1).  Actions affecting the family includes maintenance payments.  WIS. STAT. § 767.001(1)(g).  Hamdan cites no legal authority in support of his claims.  "Arguments unsupported by references to legal authority will not be considered."  *State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).

¶18    Therefore, we conclude that Hamdan has failed to show that the circuit court did not have jurisdiction over the divorce.  Because Hamdan's only argument that the circuit court erred to hold open maintenance was based on the court's lack of jurisdiction, we discern no error by the circuit court in holding open maintenance.  Therefore, we affirm this part of the court's order.

### III.    *Notice and property division*

¶19    Finally, Hamdan argues that he did not have notice that a USB drive of photographs would be included in the final signed divorce order.  "When a judicial decree seeks to affect an individual's rights or interests, due process requires such notice and procedures as are adequate to safeguard those rights." *Guelig v. Guelig*, 2005 WI App 212, ¶32, 287 Wis. 2d 472, 704 N.W.2d 916.  We reject Hamdan's argument because the record reflects that Okab asked for the USB drive in her submissions to the court well before the final order was signed, which satisfied the demands of due process.  There was no requirement that Okab had to do more to put Hamdan on additional notice about this issue.  Further,

having concluded that the court had jurisdiction over the divorce, we consider Hamdan to have been given notice that property division would be an issue decided by the court. *See* WIS. STAT. § 767.001(1)(h).

¶20 The record reflects that the issue of the possession of the USB drive was raised months before the final order. In Hamdan's first proposed Findings of Fact, Conclusions of Law, and Judgment of Divorce on July 20, 2020, and proposed Marital Settlement Agreement on July 21, 2020, he set forth that each party will retain the property in his or her previous possession. He did not propose any exchange of property. However, in Okab's proposed Findings of Fact, Conclusions of Law, and Judgment of Divorce filed on July 24, 2020, she requested a USB drive of photographs in Hamdan's possession be given to her. Hamdan and Okab then exchanged multiple updated proposed orders and the court held multiple status conferences with them. Hamdan made objections to property divisions proposed by Okab, specifically regarding bank accounts, but he did not address the USB drive. Every draft from Okab included the request for the USB drive. Therefore, we reject Hamdan's argument that he was unaware of this issue or not given notice until the final order was issued.

¶21 Further, Hamdan did not object to the transfer of the USB drive at any stage including in his motion for reconsideration. Generally, an issue "not raised in the circuit court will not be considered for the first time on appeal." *See Marotz v. Hallman*, 2007 WI 89, ¶16, 302 Wis. 2d 428, 734 N.W.2d 411 (citation omitted). Therefore, we affirm the part of the circuit court order concerning the USB drive in the property division and affirm that Hamdan must give the drive to Okab.

**CONCLUSION**

¶22    For the reasons stated above, we affirm the circuit court order insofar as it pertains to holding maintenance open for Okab and to giving the USB drive to Okab as part of the property division.  However, we reverse the part of the order that pertains to the calculation of child support and the basis for modification including extraordinary travel expenses and tax exemptions because we conclude there are inadequate findings to support our review of the order.  We remand to the circuit court for further proceedings consistent with this decision.

*By the Court.*—Order affirmed in part; order reversed in part and cause remanded for further proceedings.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.