ROSENHEIMER, Respondent, v. ROSENHEIMER, Appellant.

*No. 191. Argued March 4, 1974.—Decided April 2, 1974.*
(Also reported in 216 N. W. 2d 25.)

2

For the appellant there was a brief by *Foley & Lardner*, attorneys, and *Eugene C. Daly* of counsel, all of Milwaukee, and oral argument by *Mr. Daly*.

For the respondent there was a brief by *Binder, Zirbel & Howard*, attorneys, and *James G. Howard* of counsel, all of Milwaukee, and oral argument by *James G. Howard*.

A brief amicus curiae was filed by *James G. Pouros* and *O'Meara & O'Meara*, all of West Bend, guardians *ad litem* for Mimi Rosenheimer.

BEILFUSS, J.   The trial court found the assets and liabilities of the parties to be as follows:

|  | [Respondent] | [Appellant] |
|---|---|---|
| *"Cash"* | *"Plaintiff"* | *"Defendant"* |
| "Cash | 800.00 | None |
| Stocks | 3,100.00 | 31,000.00 |
| Home (Cedar Lake) | None | 64,500.00 |
| Furnishings |  | 4,500.00 |
| Sailboat |  | 1,200.00 |
| 16 ft. boat |  | 1,200.00 |
| 14 ft. boat |  | 350.00 |
| 1970 Chevelle |  | 1,800.00 |
| 1965 Pontiac | 300.00 |  |
| Life Insurance Policies |  |  |
| Cash value: |  | 49,515.37 |
| ½ Interest in L. Rosenheimer |  |  |
| Inc. including Mill |  | 115,000.00 |
| ½ Interest in: |  |  |
| L. 1, 2, 3, 5, 6 & 7 Bl. 4 |  |  |
| L. 4 & 5 Bl. 6 |  |  |
| L. 23 & 28 Bl. 5 |  |  |
| Roseland Hills Subdivision |  |  |
| and about 4 acres of unplat- |  |  |
| ted land in V of Kewaskum, |  |  |
| Wis. |  | 10,000.00 |
| Total Assets | 4,200.00 | 279,065.37 |
| Minus personal indebtedness | 341.12 | 49,515.37 |
| Net Worth | $3,858.88 | $229,550.00" |

The trial court awarded the plaintiff-wife $50,000 as a division of the estate to be paid within forty-five days of the date of judgment, with interest thereafter at eight percent, and retained jurisdiction of the question of alimony by a nominal award of $1 per year; set up a trust primarily for the education of Mimi in the amount of $20,000 and ordered support money payments of $325

per month for Mimi. In addition, the court awarded the plaintiff property of the value of about $4,000 as her own personal estate.

The appellant-husband, represented by different counsel on this appeal, contends the values found by the court as to the home at $64,500, and his one-half interest in L. Rosenheimer, Inc., at $115,000 cannot be sustained by the evidence.

Oliver Baumgartner, a real estate broker and appraiser, testified in behalf of the plaintiff-wife as to the value of the various real property. He lived in the nearby community of West Bend and had been a broker and appraiser for seventeen years. About 10 percent of his work is appraising. The only testimony offered by the defendant-husband as to the home was by the defendant himself.

The home was located on a desirable lot on Big Cedar Lake. It had been extensively remodeled after the marriage. It has four bedrooms, an indoor swimming pool and generally in excellent condition. Baumgartner examined the premises, determined the lake frontage was worth $250 per foot and stated that in his opinion the fair market value of the home was $69,000. The defendant first testified, based upon its assessed value, that the market value was $45,000. He later conceded the market value was $60,000.

The defendant now challenges the competency of Baumgartner as an appraiser and the factual basis from which he arrived at his opinion. From our review of the record we believe Baumgartner was a competent appraiser and that the factual background relied upon as the basis for his opinion was adequate. The weaknesses of his testimony could be considered by the trial court and the weight of this testimony determined by the court. It is our opinion the trial court's finding that the value of the home was $64,500 is supported by the credible evidence in the record.

The defendant and his cousin, Henry B. Rosenheimer, own and operate L. Rosenheimer, Inc., in Kewaskum. It is mainly a large small-town general store, a feed mill and some semi-improved lots. This business has been in the Rosenheimer family for more than ninety years. In 1952 the defendant and his cousin purchased the business from other relatives and operated it a few years as a partnership. It was subsequently incorporated and the defendant and his cousin each own 50 percent of the corporate stock.

The trial court found the value of the defendant-appellant's interest in the business to be $115,000 without an explanation as to how it arrived at that amount.

The defendant testified his interest in the business had a value of $75,000. He based this value upon the corporate balance sheet for 1970 and the trend of the business and the fact the corporation has key-man life insurance on both the defendant and his cousin in the amount of $75,000. Admittedly, 1970 was not one of the better years profit-wise. The business usually paid both the defendant and his cousin about $24,000 in salary and dividends.

The appraiser, Baumgartner, appraised the real estate of the corporation at $86,000. This appraisal was based upon his opinion of market value. His comparable sales were questionable and his examination of the property quite meager. While the factual basis for the appraiser's opinion was not very good, it is the best evidence in the record as to these real estate values. The trial court was critical of the parties, especially the defendant, for not presenting better evidence as to values and rightfully so. It is not easy to find the value of a business such as L. Rosenheimer, Inc., when the evidence is adequate— when it is not, the finding becomes most difficult. The trial court was placed in the position where it simply had to do the best it could with the evidence it had.

As a part of his argument in his brief, plaintiff-respondent's counsel has reconstructed a balance sheet from what we believe to be credible evidence. The reconstructed balance sheet is as follows:

### *"Assets"*

*"Current Assets*

| | | |
|---|---:|---:|
| Cash | . . . . . . | |
| Accounts Receivable | 35,000 | |
| Prepaid Insurance | 1,738 | |
| Merchandise Inventory | | |
| (No change) | 74,442 | |
| Total Current Assets | | 111,180 |

*Fixed Assets*

| | | |
|---|---:|---:|
| Land and Building—Appraisal | 86,000 | |
| Furniture, Fixtures & Equipment | | |
| (Depreciated value—no change) | 23,112 | |
| Trucks and Autos | | |
| (Depreciated value—no change) | 18,363 | |
| Total Fixed Assets at Actual or Depreciated Values | | 127,475 |

*Investments*

| | | |
|---|---:|---:|
| Securities, at cost | | |
| (No change) | 4,390 | 4,390 |
| Total Assets | | 243,045 |

### *Liabilities*

*Current Liabilities*

| | | |
|---|---:|---:|
| Accounts payable—shareholders | . . . . . . | |
| Accounts payable—trade | . . . . . . | |
| Notes payable | 25,000 | |
| Accrued Income Taxes | | |
| (One-half year) | 1,500 | |

| | | |
|---|---:|---:|
| Accrued Property Taxes | 2,500 | |
| Accrued Payroll & Sales | | |
|    Taxes (Beginning of quarter) | . . . . . . | |
|     Total Current Liabilities | | 29,000 |
|     Assets | | 243,045 |
|     Liabilities | | 29,000 |
|     Net Assets | | 214,045" |

From this reconstructed balance sheet the net worth of the business was $214,045. The trial court found it to be $230,000 and defendant's half interest to be $115,000. In addition to the information contained in the balance sheet, there is evidence the corporation furnished automobiles to the defendant and that he purchased food and clothing from the business at cost. These factors can justify this additional $16,000 in the net worth of the business. In any event, the finding of the trial court that the defendant's interest in the business is $115,000 is not against the great weight and clear preponderance of the evidence and will not be disturbed upon this review.

The net worth of the defendant is $229,550 and the plaintiff's is $3,858.88. For a division of estate the trial court ordered that defendant pay the plaintiff $50,000 within forty-five days from the date of the judgment and retained jurisdiction of the question of alimony by the nominal award of $1 per year. The nominal award of alimony was made upon the basis that the plaintiff is now capable of earning $10,000 to $12,000 per year.

The defendant contends that the award of $50,000 as a division of estate is excessive.

Sec. 247.26, Stats., provides that in dividing the estate of the parties the court should give ". . . due regard to the legal and equitable rights of each party, the length of the marriage, the age and health of the parties, the liability of either party for debts or support of children,

their respective abilities and estates, whether the property award is in lieu of or in addition to alimony, the character and situation of the parties and all the circumstances of the case; . . ."

The marriage was of comparatively short duration— about six and one-half years. The plaintiff-wife did not contribute to the assets held by the defendant and she is capable of self-employment. The defendant does have financial responsibility to his four children by his first marriage. The defendant does have some medical history of heart ailment and a decreased life expectancy. While the living conditions between the parties became intolerable, it cannot be said that all of the blame must be charged to the defendant.

Under these circumstances we conclude the award to the wife of $50,000, approximately 22 percent of the husband's estate, is generous but not excessive. We are of the opinion, however, that the order that this sum be paid in full within forty-five days, with interest at eight percent, is unreasonable under the circumstances of the case. The total assets of the defendant are sufficient to justify a division of estate in the amount of $50,000. However, in order to pay the entire $50,000 within forty-five days would, in all probability, require that the defendant either sell or encumber his house or his business. He should not be required to sell his home while he still has to care and provide for the children of his first marriage. The business is a small town family-owned and operated general store with limited prospects for an immediate advantageous sale. The business is incorporated and the defendant could sell his stock. The prospects for an immediate sale of his stock are probably no better than the business itself. Further, if he does sell his stock he loses his source of income that is essential to meet his other obligations. We do not here determine in what amounts and at what intervals the $50,000 is to be paid to the plaintiff because of pos-

sible tax problems and other considerations but remand it to the trial court for its reconsideration. The trial court, in its discretion, may hold an additional hearing upon this issue. A suggestion that need not be followed is that defendant pay $25,000 forthwith, with the remaining $25,000 to be paid in five annual installments of $5,000.

The trial court further ordered the defendant to deposit $20,000 with a designated trustee primarily for the purpose of providing a college education for Mimi. The order and judgment establishing the trust go further to provide for distribution of the residue of the trust after Mimi has completed her education, and at twenty-five years of age if she does not obtain an education, in various ways to the surviving children and even the possibility of additional surviving children of the plaintiff.

Under secs. 247.30, 247.31, Stats., trusts can be established by a decree of the court for the support and education of the children. It is entirely proper for a court to resort to this device when the parties consent thereto or when it reasonably appears to the satisfaction of the court that the party to be charged with the financial responsibility for the support and education of the child will fail or unreasonably resist this responsibility.[1]

In this case we find no evidence that the defendant-appellant will not provide for the education of Mimi upon the same basis that he has and is for his other four children by reason of any hostility or favoritism. The only reason which appears that he might fail to do so is his age and reduced life expectancy by reason of a heart condition. The defendant was about fifty-eight years old when Mimi was born. While this fact may well be sufficient to permit the court to direct that a trust be established, it should be noted that here the defendant

---

[1] *See: Foregger v. Foregger* (1970), 48 Wis. 2d 512, 180 N. W. 2d 578.

has made some provisions for the financial protection of all his children, including Mimi, under the Uniform Gifts to Minors Act. Additionally, this trust does not contemplate that its funds are to be used for Mimi's present support because provision was made for support in the amount of $325 per month.

A further valid objection to the trust is that it provides for the distribution of funds for the benefit of the child after she reaches her majority. In two recent cases, in considering the responsibility for the education of adult children, this court has stated:

"Divorce is a statutory proceeding. The statutes affecting divorce in this state provide for the support of minor children of the parties. No jurisdiction or authority is conferred by the divorce statutes on the court to provide in a divorce judgment, or any proceeding in a divorce action, for the support of adult children of the parties. The statutory provisions are plain and concise limiting the support, maintenance, and education of the children to the period of their minority. Hence, any order awarding support money for an adult child in a divorce action would necessarily be extra-judicial, a nullity. *Boehler v. Boehler* (1905), 125 Wis. 627, 104 N. W. 840, and *Halmu v. Halmu* (1945), 247 Wis. 124, 19 N. W. (2d) 317." *O'Neill v. O'Neill* (1962), 17 Wis. 2d 406, 408, 117 N. W. 2d 267.

". . . By statute, upheld in several cases in this court, in the absence of stipulation at least, the trial court's jurisdiction to make provisions for the care, custody, maintenance and education of children of the parties is limited to *minor* children, that is, those who have not yet reached their twenty-first birthday. As applied to a severely handicapped offspring, the application of the statute may be harsh. As applied to secondary education of any child, which nowadays customarily goes beyond the age of twenty-one, it may have become unrealistic. But the public policy set is for the legislature to establish, and for the legislature alone to amend or change." *Bliwas v. Bliwas* (1970), 47 Wis. 2d 635, 638, 178 N. W. 2d 35.

There is another reason why this trust cannot be permitted to stand. It makes rather elaborate provisions for the distribution of the remainder of the trust after Mimi has completed her education or, in the event she chose not to secure an education, to Mimi, to the other children of the defendant and conceivably even to other children of the plantiff in no way related to the defendant. We find no authority for such distribution. If there is an excess in the trust after the purpose for which it was established has been accomplished it should be returned to the party who was required to come forth with the funds necessary to create the trust.

We are of the opinion that the trust established here does not rest upon valid legal or equitable considerations and must be stricken from the judgment.

The defendant also claims the award of support money in the amount of $325 per month is excessive and, as such, an abuse of discretion. The amount of support money rests within the sound discretion of the trial court consistent with the circumstances of each individual case. This court is reluctant to interfere with support awards, however in this case we are of the opinion that the award for support money is somewhat excessive.

The plaintiff, Mimi's mother, is working and is capable of earning at least $10,000 per year and should assume a part of the financial burden of supporting Mimi. The defendant is responsible for the support of at least two of his other children. Mimi is now about nine years old. There is nothing in the record to indicate that she is not a healthy, intelligent and well-adjusted child. We believe that under these and the other circumstances as they appear that at this time of Mimi's life a support money payment by the defendant in the amount of $250 per month is fair and reasonable. As Mimi grows older and her needs increase, or other circumstances change, the amount of support money can be changed, but at

this time the judgment should be revised to provide for the payment of $250 per month for support money until further order.

*By the Court.*—Judgment affirmed in part, reversed in part and remanded for further proceedings. No costs to be taxed upon this appeal except that the trial court shall determine and allow such costs and fees to the guardian *ad litem* as are reasonable.