PERRENOUD, Respondent, v. PERRENOUD, Appellant.

No. 75–721. Submitted on briefs December 1, 1977.—Decided January 3, 1978.
(Also reported in 260 N.W.2d 658.)

38

For the appellant the cause was submitted on the briefs of *Russell R. Falkenberg, Thomas J. Sazama* and *Falkenberg & Sazama* of Cadott.

For the respondent the cause was submitted on the briefs of *Darrell O. Hibbard,* and *Hibbard, Proctor & Schrage* of Eau Claire.

ABRAHAMSON, J.   Two issues are presented in this appeal:

1.  Did the trial court abuse its discretion by granting an absolute divorce to the husband rather than to the wife?

2.  Did the trial court abuse its discretion in its division of the marital estate between the parties?

## I.

Doris and Stephen were married in Chippewa Falls, Wisconsin, on April 14, 1955. At the time of the marriage, Stephen was employed in his father's construction business, and Doris worked at a local shoe factory. She resigned shortly after the marriage. The parties' first son was born in 1957, and a second son was born in 1960. Both sons were minors at the commencement of this divorce action in February, 1975; one son is still a minor.

The early years of the marriage were, in Doris' words, "fairly normal." However, after the birth of the younger son and for the next fifteen years the marriage deteriorated. During this time Stephen became more and more involved in his father's business. He purchased the business in 1965, incorporated it in 1967, and is today president and sole shareholder in the corporation, Perrenoud, Inc. The business grew in volume, the number of employees rose from 10 in 1965 to between 50 and 70 in 1975. The corporation's taxable income in 1974 was $155,797.34, with after tax earnings of about

$94,700. Stephen personally grossed $55,000 in 1974 and $50,000 in both 1972 and 1973. Stephen testified at trial that he often worked up to fifteen hours a day; that his hours were irregular; and that he frequently missed dinner and would arrive home late in the evening.

During the marriage, Doris assumed the duties of housewife and mother. She is in her mid-forties and has arthritis. She has not been employed outside the home since leaving the job market over twenty years ago. She has devoted her life to maintaining her family and has raised their two sons.

## II.

In 1975, Stephen initiated this action for divorce on the grounds of cruel and inhuman treatment. This action stems from an incident in which Doris allegedly pointed a gun at Stephen and threatened his life. In addition, Stephen asserted that Doris regularly abused him verbally, has struck him on numerous occasions, often absented herself from home, failed to keep the house neat and failed to prepare regular meals. At trial, he testified that his health has been adversely affected as a result of the marital strife.

Doris counterclaimed for divorce, also on grounds of cruel and inhuman treatment. She charged Stephen with being away from home, drunkenness, infidelity, and failure to perform his marital duties. At the trial, Stephen admitted that in their twenty years of marriage, the couple took only one vacation lasting one night.

The trial court granted an absolute divorce to Stephen and made specific findings that Doris' actions constituted cruel and inhuman treatment and that her treatment resulted in an impairment of Stephen's health. As to her cause of action, however, the trial court stated only that "the allegations of [Doris] of cruel and inhuman

treatment by [Stephen] are insufficient to support the cause of action."[1]

Under sec. 247.07, Stats., cruel and inhuman treatment is one of several grounds for divorce in Wisconsin. Although we have not attempted to define cruel and inhuman treatment, we have described it as "treatment which does or is well calculated to impair the health of a party, makes the marriage state intolerable and renders a party incapable of performing his or her duties in married life . . . ."[2] The party asserting the cause of action must prove three elements: (a) unreasonable and unwarranted conduct by the offending spouse; (b) inability of the parties to perform their marital duties; and (c) a detrimental effect on the physical or mental health of the offended spouse.[3] In

---

[1] "7. That during the time the parties were married the Defendant pursued a course of cruel and inhuman treatment toward the Plaintiff consisting, among other things, the following: Defendant over a long period of time has been uncooperative to the Plaintiff and has not exhibited any love or affection toward him, that she has manifested an attitude of indifference and dislike toward him on numerous occasions employing strong and abusive language toward him, being indifferent and uncooperative with him in his employment, absenting herself from the home of the parties without previous advice or warning, and without explanation, and having threatened him, when he was resting, with a 38 caliber revolver on the 17th day of January, 1975 ordering him to leave the home of the parties. That all of said conduct has caused the Plaintiff herein to be nervous, upset, and has interfered with his health causing him pain, humiliation, and suffering in mind and the allegations of the Defendant of cruel and inhuman treatment by the Plaintiff are insufficient to support the cause of action." Trial Court's Findings of Fact and Conclusions of Law.

[2] *Gordon v. Gordon*, 270 Wis. 332, 340, 71 N.W.2d 386 (1955).

[3] *McMurtrie v. McMurtrie*, 52 Wis.2d 577, 580, 191 N.W.2d 43 (1971); *Williams v. Williams*, 51 Wis.2d 453, 456, 187 N.W.2d 208 (1971).

arriving at its decision, the trial court must look to the totality of circumstances surrounding the case.[4]

The weight of the evidence and the credibility of the witnesses are matters within the province of the trial court as the trier of facts. It is settled law in this state that the findings of fact of a trial court on appeal from a divorce judgment must be affirmed unless contrary to the great weight and clear preponderance of the evidence.[5]

This court has consistently held that the trial court must make specific findings of fact, both as to the facts constituting cruel and inhuman treatment and the effect upon the health of the complaining spouse.[6] The trial court must consider all facts raised by the parties, and a "mere holding that there has not been established the cruel and inhuman treatment alleged falls short of meeting the statutory requirements of adequate findings of fact."[7]

This court, when confronted with inadequate findings of fact, may affirm the judgment of the trial court if supported by the great weight and clear preponderance of the evidence; it may reverse the judgment if not so

[4] *McMurtrie*, note 3 *supra* at 579; *Heffernan v. Heffernan,* 27 Wis.2d 307, 312, 313, 134 N.W.2d 439 (1965). However, one act alone may constitute cruel and inhuman treatment, *Merten v. Nat'l Mfg. Bank,* 26 Wis.2d 181, 187, 131 N.W.2d 868 (1965).

[5] *Mason v. Mason,* 44 Wis.2d 362, 365, 366, 171 N.W.2d 364 (1969); *Gauer v. Gauer,* 34 Wis.2d 451, 454, 149 N.W.2d 533 (1967); *Spheeris v. Spheeris,* 37 Wis.2d 497, 505, 155 N.W.2d 130 (1967); *Weeden v. Beloit,* 29 Wis.2d 662, 666, 139 N.W.2d 616 (1966); *Gordon,* note 2 *supra*, at 340.

[6] *Lavota v. Lavota,* 70 Wis.2d 971, 973, 236 N.W.2d 224 (1975); *Cary v. Cary,* 47 Wis.2d 689, 692, 177 N.W.2d 924 (1970); *McMurtrie,* note 3 *supra*, at 579.

[7] *Cary,* note 6 *supra,* at 692.

supported; or it may remand the cause for the purpose of making appropriate findings of fact and conclusions of law.[8]

In the case at bar, each party has made numerous allegations. The trial court, in its findings of fact, made a specific finding supporting Stephen's cause of action, but not Doris'. According to the record, each party appears to have provided sufficient evidence to support a claim of cruel and inhuman treatment. Thus the decisive factor for the trial court must have been the credibility of the various witnesses, which is a matter peculiarly within the province of the trier of fact. Under these circumstances, remanding this case to the trial court for more specific findings and a fuller explanation would be a futile exercise.

Since the record supports the judgment granting the divorce to Stephen, that portion of the judgment is affirmed.

### III.

The parties were unable to stipulate as to the property division, and the trial court valued the assets and then divided them between the parties. No alimony was awarded to Doris. The custody of the younger son was left in both parents. The trial court did not value the property as divided, and on appeal the parties disagree as to the value of the property each acquired. The trial court's division of the property, and each party's evaluation thereof is as follows:

[8] *Lavota*, note 6 *supra*, at 974; *McMurtrie*, note 3 *supra*, at 579; *Jacobs v. Jacobs*, 42 Wis.2d 507, 513, 167 N.W.2d 238 (1969); *Walber v. Walber*, 40 Wis.2d 313, 319, 161 N.W.2d 898 (1968).

| To Mrs. Perrenoud: | Value according to Doris | Value according to Stephen |
|---|---|---|
| 1. All her personal effects, etc. | no value | no value |
| 2. The dwelling house and one acre of land with 1975 taxes paid | $ 28,500.00[9] | $ 37,000.00 |
| 3. 1974 Chevrolet automobile | 4,000.00 | 4,025.00 |
| 4. New Holland garden tractor | not valued by trial court | 1,200.00 |
| 5. Household furnishings | 6,000.00 | 6,000.00 |
| 6. Antique collection | 3,500.00 | 3,500.00 |
| 7. Cash payable on or before January 1, 1976 | 20,000.00 | 20,000.00 |
| 8. Account at The American National Bank & Trust Co. of Eau Claire —checking account | | 6,087.59[10] |
| 9. Attorney fees for Doris | not included | 3,500.00 |
| 10. Installment payments of $750 per month for 144 months, guaranteed by life insurance policies on Stephen's life | 108,000.00 | 108,000.00 |
| Total | $170,000.00 | $189,312.59 |

[9] The court found that the house, with 8 acres of land, was worth $40,000. There was no finding of fact as to the value of the house with only one acre and as to the value of the seven acres.

[10] It is disputed whether this account is included within the division of property; it was not included in the division in the judgment.

| To Mr. Perrenoud: | Value according to Doris | Value according to Stephen |
|---|---|---|
| 1. 7 acres of real estate | $ 11,500.00 | $ 7,000.00 |
| 2. 500 units Nuveen Tax Exempt Bonds | 44,225.00 | 44,225.00 |
| 3. Cash | 102,910.63 | 96,633.91 |
| 4. Loans payable to Stephen | 64,685.70 | 62,800.00 |
| 5. Cash value of life insurance | 10,254.00 | 10,209.00 |
| 6. 700 shares of stock in Perrenoud, Inc., with adjusted book value of | 480,316.54 | 480,316.54 |
| 7. Personal effects, etc. | no value | no value |
| Total | $713,891.87 | $701,184.45 |
| Less attorney fees to Mrs. Perrenoud | 3,500.00 | 3,500.00 |
| Total | $710,391.87 | $697,684.45 |

Doris claims that in distributing the marital estate, the trial court abused its discretion, in that (a) the award to her is inadequate, (b) the trial court failed to consider all relevant factors, and (c) the trial court failed to make adequate findings of fact on which to base the award. Stephen's position is that the award is fair. It enables Doris to maintain herself in like or better circumstances than she had experienced during the marriage, and it gives him "the business which he had developed and managed without help or assistance" from Doris.

This court has long held that a division of property in divorce is within the sound discretion of the trial

court and that the division will not be disturbed unless an abuse of discretion is shown.[11] An abuse of discretion occurs when the trial court has failed to consider proper factors, has made a mistake or error with respect to the facts upon which the division was made, or when the division itself was, under the circumstances, either excessive or inadequate.[12]

Prior to *Lacey v. Lacey*, 45 Wis.2d 378, 173 N.W.2d 142 (1970), one of the guidelines of this court was that a property division awarding one-third of the net marital estate to the wife was considered a liberal allowance to the wife subject to increase or decrease according to special circumstances.[13] We have specifically rejected a "rule of thumb" or a strict mathematical formula for the division of the marital estate in a divorce action, and we have emphasized that each case must be decided upon the material facts present therein.[14]

In *Lacey* this court set forth the factors to be considered in the division of the marital estate:

". . . Whatever is material and relevant in establishing a fair and equitable basis for division of the prop-

[11] *Wilberscheid v. Wilberscheid*, 77 Wis.2d 40, 44, 252 N.W.2d 76 (1977); *Bussewitz v. Bussewitz*, 75 Wis.2d 78, 83, 248 N.W.2d 417 (1977); *Czaicki v. Czaicki*, 73 Wis.2d 9, 20, 242 N.W.2d 214 (1976); *Parsons v. Parsons*, 68 Wis.2d 744, 749, 229 N.W.2d 629 (1975).

[12] *Bussewitz*, note 11 *supra*, at 83, 84; *Anderson v. Anderson*, 72 Wis.2d 631, 638, 242 N.W.2d 165 (1976); *Parsons v. Parsons*, note 11 *supra*, at 750; *Leeder v. Leeder*, 46 Wis.2d 464, 468, 469, 175 N.W.2d 262 (1970).

[13] *Jordan v. Jordan*, 44 Wis.2d 471, 171 N.W.2d 385 (1969); *Kronforst v. Kronforst*, 21 Wis.2d 54, 123 N.W.2d 528 (1963); *Schneider v. Schneider*, 15 Wis.2d 245, 112 N.W.2d 584 (1961).

This "one-third rule of property division" was derived from a statement of this court in *Gauger v. Gauger*, 157 Wis. 630, 633, 147 N.W. 1075 (1914).

[14] *Tesch v. Tesch*, 63 Wis.2d 320, 327, 217 N.W.2d 647 (1974); *Shetney v. Shetney*, 49 Wis.2d 26, 31, 181 N.W.2d 516 (1970).

erty of the parties may be considered. Such relevant factors certainly include the length of the marriage, the age and health of the parties, their ability to support themselves, liability for debts or support of children, general circumstances, including grievous misconduct, although a division is not a penalty imposed for fault. Whether the property award is in lieu of or in addition to alimony payments is a material factor. . . ." *Id.* at 383.[15]

Furthermore, in *Lacey* we concluded that the division of the property of divorced parties rests on the concept of marriage as a shared enterprise, a joint undertaking, a partnership. The court noted that there is no mechanical formula with which to divide the property: a short marriage may require a small share to the wife, while in a long marriage, as we have here, "a fifty-fifty division may well represent the mutuality of enterprise." *Id.* at 382, 383.[16]

In *Lacey* this court made clear that: "If on review the equitableness of a division of property is to depend upon the material facts and factors present in the case, it follows that a firm foundation for such division must be laid by including in findings or decision the factors found relevant and considered by the judge." *Id.* at 386.

[15] The substance of the above quote from the *Lacey* opinion was codified in sec. 247.26, Stats.:

". . . The court may also finally divide and distribute the estate, both real and personal, of either party between the parties and divest and transfer the title of any thereof accordingly, after having given due regard to the legal and equitable rights of each party, the length of the marriage, the age and health of the parties, the liability of either party for debts or support of children, their respective abilities and estates, whether the property award is in lieu of or in addition to alimony, the character and situation of the parties and all the circumstances of the case . . . ."

[16] According to Doris' calculation she received only 22 percent of the estate not considering the tax consequences and 19 percent after taxes; according to Stephen's calculation Doris received 24 percent of the marital estate.

On this appeal a principal issue is whether a foundation exists for the trial court's division of the property. We cannot find any. The trial court sent a letter to counsel which amounted to a brief summary of what ultimately became the findings of fact and conclusions of law. There was no opinion or memorandum decision by the trial court expressing a rationale for the trial court's division of property.

Nor do the trial court's findings of fact or conclusions of law state any reason whatsoever for the trial court's division of property or failure to grant alimony. We could not find any statement by the trial court that it had considered any of the factors set forth in *Lacey*.[17] There is nothing to indicate that the trial court considered the tax consequences of the award.[18] The trial court did not explain why it valued the Perrenoud corporate stock at its adjusted book value and whether it considered other factors relating to fair market value which we have, in prior cases, indicated are relevant.[19]

In *Vier v. Vier*, 62 Wis.2d 636, 639, 640, 215 N.W.2d 432 (1974), we held it is not necessarily reversible error or even an abuse of trial court discretion if the trial court fails to include in its findings or decision the relevant factors, so long as this court can conclude from the record that the division of property or the award of alimony was reasonable. However, *Vier* does not require this court to review the record *de novo*. We need not in every divorce case search the record to locate

[17] The trial court did find "That [Stephen] is able bodied earning in excess of $55,000 per year. That [Doris] has no earnings or income other than the sale of antiques."

[18] *See Seiler v. Seiler*, 48 Wis.2d 400, 406, 180 N.W.2d 627 (1970); *Wetzel v. Wetzel*, 35 Wis.2d 103, 110, 111, 150 N.W.2d 482 (1967).

[19] *See Wahl v. Wahl*, 39 Wis.2d 510, 515, 159 N.W.2d 651 (1968); *Whitman v. Whitman*, 34 Wis.2d 341, 149 N.W.2d 529 (1967).

reasons upon which the trial court might have relied to reach the result it did.

We decline to search for an explanation of the division of property in this case. Indeed, on its face, the award to Doris appears low,[20] and Stephen's justification of the award fails to take into account an important factor which this court has consistently recognized, namely, the value of the uncompensated work of housewives or househusbands. In *Bussewitz v. Bussewitz,* 75 Wis.2d 78, 86, 248 N.W.2d 417 (1977), and in *Lacey, supra* at p. 383, we noted that in dividing property upon divorce, the contribution of a full-time homemaker may be considered greater than, or at least as great as, that of a working spouse. The fact that one party to the marriage worked outside the home while the other cared for the home and children has little bearing on the outcome of the property division if marriage is to be viewed as a "partnership," in which the parties contribute according to their respective abilities to the acquisition and preservation of marital assets. *Lacey, supra* at p. 382; *Kunde v. Kunde,* 52 Wis.2d 559, 562, 191 N.W.2d 41 (1971); *Wilbersheid v. Wilbersheid,* 77 Wis.2d 40, 47, 252 N.W.2d 76 (1977). This is a twenty-year marriage. Doris was a frugal wife who raised the children. She has not been employed outside her home for more than twenty years.

The term discretion contemplates a process of reasoning. The process depends on facts that are of record or that are reasonably derived by inference from the

---

[20] *See, e.g., Wilberscheid,* note 11 *supra; Anderson,* note 12 *supra; Parsons,* note 11 *supra; Markham v. Markham,* 65 Wis.2d 735, 223 N.W.2d 616 (1974); *Lavota,* note 6 *supra.* In *Rosenheimer v. Rosenheimer,* 63 Wis.2d 1, 216 N.W.2d 25 (1974), this court upheld an award to the wife of 22 percent of the marital estate. That case involved a marriage of short duration, where the wife worked and the husband had support obligations for four children of a previous marriage.

record. The discretion must in fact be exercised, and the trial judge must set forth the basis for the exercise of discretion. Adherence to this practice facilitates the decision-making process of the trial court in the first instance and aids appellate review.

This case is not in a proper posture for appellate review. Without the trial court's reasons for the division of the property, appellate review of the fairness of the result is impossible. The judgment insofar as it relates to the valuation of assets, division of the property of the parties and the granting of alimony must be reversed and the cause remanded to the trial court to set forth all facts and factors which it considered in reaching its determination as to valuation, division of property, and alimony. Upon a review of the record the trial court may conclude that there is an inadequate basis for making the findings required, and the trial court may reopen the case and take additional testimony, if it so elects. Since that part of the judgment relating to valuation, property division, and alimony is reversed, the remand imposes on the trial court the obligation to reconsider these matters. Although we have commented that the award to Doris appears low, we do not hold it to be inadequate. Nor do we hold that the trial court must reach a different conclusion as to the ultimate division of property in this case. We do hold, however, that on remand the trial court must reconsider valuation, property division and alimony, and may modify any part of the judgment relating to these three matters.

*By the Court.*—That part of the judgment granting an absolute divorce to Stephen A. Perrenoud is affirmed; that part of the judgment valuating and dividing the marital assets of the parties and denying alimony is reversed, and the cause is remanded for further proceedings consistent with this opinion.