Maria SCHLINDER, Petitioner-Respondent,

v.

George C. SCHLINDER, Appellant,

MILWAUKEE COUNTY, Intervening Party.

Court of Appeals

*No. 81-971. Submitted on briefs April 14, 1982.—Decided May 25, 1982.*
(Also reported in 321 N.W.2d 343.)

696

For the appellant the cause was submitted on the brief of *Marjan R. Kmiec* and *Richard A. Sachs, Jr.,* of Milwaukee.

For the petitioner-respondent the cause was submitted on the brief of the *Law Offices of Alvin H. Eisenberg, S.C.,* by *Chris M. Clemens,* of Milwaukee.

Before Decker, C.J., Moser, P.J., and Randa, J.

DECKER, C.J.   The issues on appeal in this divorce case are whether: (1) the marriage in question was invalid because neither of the underlying Mexican divorces of the parties was valid; (2) the marriage was severed by a Mexican divorce procured by the husband one year after the marriage; and (3) the marriage was the product of duress and fraud and should have been annulled.

We conclude that the husband is estopped from questioning the validity of the underlying Mexican divorces, that the Mexican divorce procured by the husband was invalid, and that the finding of no duress or fraud is not contrary to the great weight and clear preponderance of the evidence.   We affirm.

George C. Schlinder (George) married June Schlinder (June) in 1949, and Maria Schlinder (Maria) married Arnold Bergmark (Arnold) in 1949. Maria met George while separated from Arnold, and they produced a child while she was still married to Arnold. In 1966, Maria obtained a Mexican divorce from Arnold, and in 1967 she married George in Mexico. Maria later discovered that George was still married to June. In 1969, George obtained a Mexican divorce from June. In 1969, after his Mexican divorce from June, George married Maria in Alabama.

In late 1969 or early 1970, George obtained a Mexican divorce from Maria, but from 1969 to 1974 Maria and George lived together as husband and wife, filing joint income tax returns and a joint bankruptcy petition, jointly purchasing real estate, and using a joint checking account.

In 1974, George deserted Maria in California, where they were then living. He moved to Milwaukee, and in 1978 Maria began a divorce proceeding in Milwaukee county. George responded that there was no valid marriage between the parties, and filed a counterclaim seeking annulment of the marriage. The trial court found that George and Maria were married in Alabama in 1969, that they were husband and wife from that date, and that the marriage was irretrievably broken. George's counterclaim was dismissed, and Maria was granted a judgment of divorce. The trial court declared property rights and ordered George to pay support, temporary maintenance, and contribution toward Maria's attorney's fees.

George argues the following on appeal:

(1) There never was a valid marriage to Maria because their underlying Mexican divorces from their respective first spouses were invalid;

(2) If there was a valid marriage to Maria in 1969, it was severed by his Mexican divorce from her; and

(3) The 1969 marriage should be annulled because it was the product of duress and fraud exercised by Maria. We reject these arguments and affirm.

## UNDERLYING MEXICAN DIVORCES

Before their marriage in 1969, both Maria and George engaged the services of a Milwaukee attorney to procure Mexican divorces from their respective first spouses. George argues that the 1969 marriage was invalid because neither of the Mexican divorces was valid. The trial court refused to rule on the validity of the Mexican divorces. We find no error because we conclude that George is estopped to challenge them regardless of their validity.

Restatement (Second) of Conflict of Laws sec. 74 (1971) states the rule applicable to this issue: " 'Estoppel' to Deny Jurisdiction. A person may be precluded from attacking the validity of a foreign divorce decree if, under the circumstances, it would be inequitable for him to do so." Comment *a.* to this rule provides in part:

The rule of this Section does not provide an additional basis for the exercise of divorce jurisdiction; rather it proceeds on the assumption that even when the divorce court lacks jurisdiction there are situations where in all equity a particular person should not be permitted to challenge the decree. Unlike the principle of res judicata (see § 73), application of this estoppel doctrine has not to date been held required by any constitutional mandate. Its applicability in a particular case has been held to be determined not by the local law of the state in which the divorce was granted but by the local law of the state in which the validity of the divorce is attacked. Each State of the United States has been deemed free, at least within broad limits, to determine the rule's scope and effect.

In *Estate of Gibson: Gibson v. Madison Bank & Trust Co.*, 7 Wis. 2d 506, 511, 96 N.W.2d 859, 862 (1959), our supreme court in dicta indicated that Wisconsin embraces this rule of estoppel: "If the deceased during his lifetime had attempted to assert the invalidity of the [Mexican divorce] decree he would have been estopped on the grounds that he had obtained the divorce and had remarried." [Citing, *inter alia,* Restatement of Conflict of Laws sec. 112 (1934), the forerunner to Restatement (Second) of Conflict of Laws sec. 74 (1971).]

Our examination of the policy supporting this rule convinces us that it is sound and applies in this case to preclude George from challenging the validity of his Mexican divorce from June. The most comprehensive and frequently cited commentary on this theory is Clark, *Estoppel Against Jurisdictional Attack on Decrees of Divorce,* 70 Yale L.J. 45 (1960). Professor Clark explicates the theory as follows:

Estoppel, or quasi-estoppel, as some cautious courts prefer it, has been shown to be approved by the great majority of courts. It rests not upon vague notions of fairness or equity or relative rectitude of the parties, and not upon the dubious distinction between private and matrimonial lawsuits, but rather upon the contemporary view that when a marriage has ended, and its end has been recognized by divorce, little is to be gained by treating it as if it were still in force. *Id.* at 68.

[A] principle is emerging from the cases which, with allowances for differences of approach, offers an explanation for the results reached and gives insight into the operative policies. It turns upon the conduct of the parties rather than the type of action. Three factors seem to be involved: (1) The attack on the divorce is inconsistent with prior conduct of the attacking party. (2) The party upholding the divorce has relied upon it, or has formed expectations based upon it. (3) These relations or expectations will be upset if the divorce is held invalid. When either the first and third, or the second and third, of these factors exist, then one or the other or both of the

parties have treated the marriage as at an end, and estoppel to attack the divorce amounts to recognition that such a marriage cannot be resurrected. All three factors will sometimes appear in a single case, making the nature of the situation particularly plain.

To put the principle in concise form, if the person attacking the divorce is, in doing so, taking a position inconsistent with his past conduct, or if the parties to the action have relied upon the divorce, and if, in addition, holding the divorce invalid will unset relationships or expectations formed in reliance upon the divorce, then estoppel will preclude calling the divorce in question. *Id.* at 56–57.

In the case before us, the trial court found that George married Maria after his Mexican divorce from June. Following this marriage George and Maria lived together as husband and wife for five years. These findings are supported by ample evidence in the record, and constitute the nature of facts necessary to application of the above estoppel theory. George's marriage to Maria and his subsequent conduct as her husband preclude his attack on the validity of his divorce from June. *See, e.g., Mattos v. Correia,* 79 Cal. Rptr. 229, 232–33 (Cal. Ct. App. 1969) (Mexican divorce) ; *Chilcott v. Chilcott,* 65 Cal. Rptr. 263, 264 (Cal. Ct. App. 1968) (Mexican divorce) ; *Clagett v. King,* 308 A.2d 245, 248–49 (D.C. 1973) (prior Mexican divorces of each party) ; *In re Marriage of Gryka,* 413 N.E.2d 153, 155–57 (Ill. App. 1980) (Illinois divorce) ; *Turpin v. Turpin,* 186 So. 2d 650 (La. Ct. App.), *aff'd,* 187 So. 2d 741 (La. 1966) (Arkansas divorce) ; Annot., 13 A.L.R.3d 1419, 1452–60 (1967).

George also challenges the validity of Maria's Mexican divorce from her first husband, Arnold. Although the Restatement observes that "[t]he cases are divided on the question whether third persons may be estopped from attacking a divorce decree," Restatement (Second) of Conflict of Laws sec. 74 comment *b.,* at 226 (1971),

we agree with Professor Clark that the public policy underlying the theory makes it equally applicable to estoppel of third persons:

> One fact of great importance to the application of estoppel is the remarriage of one or both of the parties to the void divorce. When this happens, the social purpose which has been advanced as the real basis for estoppel clearly demands recognition of the later marriage. *Dietrich v. Dietrich* [261 P.2d 269 (Cal. 1953), *cert. denied,* 346 U.S. 938 (1954)] is a good example. Here, in a separate maintenance suit by the wife, her husband alleged that her Nevada divorce from a prior husband was void. The court held that since the defendant had married the plaintiff with full knowledge of the circumstances in which she obtained her divorce, and had lived as her husband for many years, he was estopped to question her obviously invalid divorce. In this case the factors of inconsistent prior conduct, and reliance by the wife, were both present. . . . [E]stoppel was applied in favor of the wife and against the husband even though the wife knew the circumstances of her own divorce, and presumably had the means of finding out that it was void. In other words, in this case no one was misled; the ground for estoppel was the reliance of both parties. Clark, *Estoppel, supra,* 70 Yale L.J. at 58 (footnotes omitted).

In this case, the trial court found that George married Maria in 1969 and lived with her as husband and wife, after she had obtained, with George's knowledge, a Mexican divorce from her first husband, Arnold. George testified on direct examination that he believed that his marriage to Maria was legal. We conclude that George is now estopped from challenging the validity of Maria's Mexican divorce.

## VALIDITY OF GEORGE'S MEXICAN DIVORCE FROM MARIA

George testified that in December of 1969 he obtained a Mexican divorce from Maria, and argues that if the

earlier Mexican divorces of Maria from Arnold and George from June are valid, so is his Mexican divorce from Maria.

We refuse to accept such a syllogism. Because of George's conduct and Maria's reliance, we have concluded that George is precluded from challenging the validity of the earlier Mexican divorces. As we noted earlier, the rule of sec. 74 of the Restatement (Second) of Conflict of Laws "proceeds on the assumption that even where the divorce court lacks jurisdiction there are situations where in all equity a person should not be permitted to challenge the decree," comment *a.,* and recognizes the de facto end of a marital relationship.

It is clear from the record that George's purported 1969 Mexican divorce from Maria was not the de facto end of their marital relationship, and no equitable factors preclude, by estoppel or otherwise, examination of the validity of the decree. George admitted that Maria had no notice of the divorce proceedings at the time he procured the decree in 1969. The trial court found that George and Maria lived together continuously as husband and wife from 1969 to 1974. The conduct of the parties is not such that they or we should be precluded from examining the validity of the 1969 Mexican divorce.

George Schlinder's 1969 Mexican divorce from Maria Schlinder is not entitled to recognition in this state. The record shows no proof of domicile of George or Maria other than in California or Wisconsin. In such an instance, we find *Estate of Gibson, supra,* 7 Wis. 2d at 510, 96 N.W.2d at 862, to be controlling:

Here we are not dealing with full faith and credit but with the recognition of a Mexican divorce. No reasons exist, and certainly not on the grounds of comity, why this state should recognize a Mexican divorce void under the laws of this state when a similar divorce granted by

a sister state is not entitled to full faith and credit. The uniformity sought by the full-faith-and-credit clause of the constitution requires that a void divorce may be collaterally attacked in any state, and such attack is not confined to the state or states in which the parties to such divorce had their domicile at the time of the granting of the void divorce. It is immaterial whether the deceased had a residence or was domiciled in Missouri; at most, he was not domiciled in Mexico.

The trial court did not err in refusing to recognize George's Mexican divorce from Maria.

## ANNULMENT

George argues that the trial court should have annulled his 1969 marriage to Maria because it was the product of duress and fraud. He testified that he married Maria because she threatened suicide if he did not and because she convinced him that she would die of cancer within a year. Maria denied both acts. The trial court found Maria's testimony more believable.

The weight of the evidence and the credibility of the witnesses are matters within the province of the trial court as the trier of facts. It is settled law in this state that the findings of fact of a trial court on appeal from a divorce judgment must be affirmed unless contrary to the great weight and clear preponderance of the evidence. *Perrenoud v. Perrenoud,* 82 Wis. 2d 36, 42, 260 N.W.2d 658, 661 (1978) (footnote omitted).

The trial court was free to believe either Maria or George. Because it chose to believe Maria, we need not decide whether the grounds raised by George involve "the essentials of marriage." Sec. 767.03 (1), Stats.

*By the Court.*—Judgment affirmed.